UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| ANITA BEAUFORD,<br><br>                         Plaintiff,<br><br>    v.<br><br>THE JOHNS HOPKINS HOSPITAL, INC., THE JOHNS HOPKINS HEALTH SYSTEM CORPORATION, and THE JOHNS HOPKINS UNIVERSITY,<br><br>                         Defendants. | Case No.: 1:23-cv-00660-JKB<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO REMAND** |

**INTRODUCTION**

Defendants The Johns Hopkins Hospital, Inc., The Johns Hopkins Health System Corporation, and The Johns Hopkins University (collectively, "Defendants" or "Johns Hopkins") present no persuasive reason for the Court to deny Plaintiff's motion to remand. Defendants have not articulated how this case satisfies the requisite elements for removal under the federal officer removal statute, 28 U.S.C. § 1442. They cannot.

Plaintiff alleges Defendants wrongfully placed the Facebook Tracking Pixel—a piece of technology offered by Meta Platforms, Inc., formerly known as Facebook, Inc. ("Facebook")—on their website, which allowed Facebook to intercept Plaintiff's and class members' communications with Defendants for analytics and marketing purposes. Because the federal government has condemned this conduct as violating patients' privacy rights, Defendants' argument that Defendants were acting on behalf of the federal government lacks credibility. Defendants also fail to show any causal connection between the alleged misconduct and any government directive. There is none.

Defendants mischaracterize the basis for this action as Defendants' "website management practices designed to increase web traffic and increase engagement with Johns Hopkins' website and patient portal in furtherance of the goals of the Meaningful Use Program." Dkt. 13 at 12.[1] But even if that were the relevant conduct, removal was still improper. While Defendants' "website management practices" may have assisted in some tangential way with creating a unified system for patient electronic health records, those practices are insufficient for removal under the federal officer removal statute. Contrary to Defendants' argument, "receiving incentive payments for acting in a way that promotes a broad federal interest – in an area outside the traditional responsibility of the federal government – is not the same as being contracted to carry out, or assist with, a basic governmental duty." *Quinto v. Regents of the Univ. of Cal.*, 2023 WL 1448050, at *2 (N.D. Cal. Feb. 1, 2023). Moreover, "[t]he directions [Defendants] point[] to are general regulations and public directives regarding the development of health information technology and an electronic health records infrastructure. Therefore, removal is not justified by federal officer jurisdiction." *Heard v. Torrance Mem'l Med. Ctr.*, 2023 WL 2475544, at *3 (C.D. Cal. Mar. 13, 2023); *see also Mohr v. Trustees of the Univ. of Pa.*, 2023 WL 3044594, at *2 (E.D. Penn. Apr. 20, 2023) ("though one who complies with the law . . . does in a sense help or assist the federal government, more is required to fall within the scope of the statute.").

This case is almost identical to *Quinto, Heard* and *Mohr*. In those cases, (a) the defendants (represented by the same defense counsel as Defendants here) made the same arguments in their motions to remand as Defendants do here. The courts rejected the arguments and remanded the cases. This Court should do the same.

---

[1] Citations to page numbers of docketed entries are to the CM/ECF-stamped page numbers.

**ARGUMENT**

As Plaintiff outlined in his Motion to Remand, "[u]nder the [federal officer removal] statute, private actors can remove a case to federal court when they: (1) acted under the direction of a federal officer; (2) have a colorable federal defense; and (3) are engaged in government-directed conduct that was causally related to the plaintiff's claims." *W. Va. State Univ. Bd. of Governors v. Dow Chem. Co.* ("*W. Va. State*"), 23 F.4th 288, 297 (4th Cir. 2022). Defendants fail to satisfy the requisite elements for removal – namely, they fail to show they acted under the direction of a federal officer or that they engaged in government-directed conduct that was causally related to Plaintiff's claims.

**I.     Defendants Did Not Act Under the Direction of a Federal Officer.**

Under Fourth Circuit law, to be considered as "acting under" a federal official, the removing party must establish that it was "'acting under' the 'subjection, guidance, or control' of the [federal agency] such that Defendants were completing tasks on behalf of the federal government and that, without Defendants, the federal government would have performed itself." *Id.* at 298.

**A.     Defendants Were Not Completing Tasks on Behalf of the Federal Government.**

Defendants argue they were acting under the direction of a federal officer because they were "assisting the federal government," and the government was paying them to comply with the Meaningful Use program "to fulfill a federal goal." *See* Dkt. 13 at 14-18. The argument fails.

Defendants voluntarily chose to participate in the Meaningful Use Program and to adhere to its requirements. "A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.' And that is so even if the regulation is highly detailed and even if the private firm's

activities are highly supervised and monitored." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 153 (2007). As the Supreme Court has held, a "contrary determination would expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries." *See id.* at 153; *see also Heard*, 2023 WL 2475544, at *3 ("[t]he directions [Defendants] point[] to are general regulations and public directives regarding the development of health information technology and an electronic health records infrastructure. Therefore, removal is not justified by federal officer jurisdiction."); *Quinto*, 2023 WL 1448050, at *2 ("receiving incentive payments for acting in a way that promotes a broad federal interest – in an area outside the traditional responsibility of the federal government – is not the same as being contracted to carry out, or assist with, a basic governmental duty."); *Mohr*, 2023 WL 3044594, at *2 ("though one who complies with the law . . . does in a sense help or assist the federal government, more is required to fall within the scope of the statute."). Nevertheless, Defendants ask the Court to interpret the statute so as to "expand the scope of the statute considerably," something the Court may not do.

Defendants contend *Heard*, *Quinto* and *Doe, I v. BJC Health Sys.*, 2023 WL 369427 (E.D. Mo. Jan. 10, 2023), were wrongly decided or are distinguishable. Dkt. 13 at 17. Not so. The courts in those cases followed Supreme Court authority and are directly on point. The defendants in those cases made the same arguments as Defendants do here (because they were represented by the same counsel as Defendants here), and those courts properly rejected them. *See Quinto*, 2023 WL 1448050, at *2-3; *Heard*, 2023 WL 2475544, at *3; *BJC Health Sys.*, 2023 WL 396427, at *4 Numerous other recent decisions have similarly rejected the same arguments made by the same defense counsel. *See Mohr*, 2023 WL 3044594 at *2-5; *Browne v. Cedars-Sinai Health Sys.*, 2023 WL 3095551, at *1-3 (C.D. Cal. Apr. 26, 2023); *Doe v. Hoag Mem'l Presbyterian Hosp.* ("*Hoag*"),

2023 WL 3197716, at *2-3 (C.D. Cal. May 2, 2023).[2]  This Court should similarly reject Defendants' recycled and meritless arguments.

**B.     Defendants Did Not Follow the Close Direction of the Federal Government.**

Defendants further argue that: (a) they were following "guidelines"; (b) the federal government monitored their compliance with the Meaningful Use Program, with Defendants "submitting detailed reports on patient portal activities"; and (c) the federal government "offered a model for providers to follow that uses third-party marketers." Dkt. 13 at 18-19; *see also* Dkt. 1 ("Notice of Removal") ¶ 11 (CMS offers a model for providers to follow).  The conduct Defendants describe does not evidence the close direction, subjection, guidance or control, or the unusually close relationship, required for removal.  *See W. Va. State*, 23 F.4th at 303-04 (no removal despite highly detailed statutes and regulations).  The fact that a private actor is "merely complying with federal laws, regardless of how stringent and detailed the regulations may be," does not equate to the private actor "acting under" federal "subjection, guidance, or control." *Id.* at 301; *see also Quinto*, 2023 WL 1448050, at *3 (citations omitted) ("merely being subject to a regulatory scheme is not the same as acting under a federal agency's close direction."); *Heard*, 2023 WL 2475544, at *3 ("[t]he directions [Defendants] point[] to are general regulations and public directives regarding the development of health information technology and an electronic health records infrastructure.  Therefore, removal is not justified by federal officer jurisdiction."); *Mohr*, 2023 WL 3044594 at *4 (emphasis in original) (agency "directives do not, without more,

---

[2] The day after the court in *Hoag* remanded that matter, the same defense counsel in this case removed another Facebook Tracking Pixel action against Hoag Memorial Presbyterian Hospital to federal court, *see Davis v. Hoag Mem'l Presbyterian Hosp.*, No. 8:23-cv-00772-CJC (KESx) (C.D. Cal.), prompting the court to issue an "Order to Show Cause Why This Action Should Not Be Remanded and Why Sanctions Should Not Issue." *Id.* at Dkt. 12 (May 8, 2023).

bootstrap private persons who *choose* to adhere to non-binding directives for financial gain into the category of persons 'acting under' the United States.").

In fact, Defendants' conduct in placing the tracking code on their website is directly contrary to the directives of the Department of Health and Human Services ("DHHS"), which make clear that "[r]egulated entities . . . are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors." *See* DEPARTMENT OF HEALTH AND HUMAN SERVICES, USE OF ONLINE TRACKING TECHNOLOGIES BY HIPAA COVERED ENTITIES AND BUSINESS ASSOCIATES, Dec. 1, 2022.[3] Further, Executive Order 13335, section 2(f) states: "In fulfilling its responsibilities, the work of the National [Health Information Technology] Coordinator shall be consistent with a vision of developing a nationwide interoperable health information technology infrastructure that: . . . (f) Ensures that patients' individually identifiable health information is secure and protected." Therefore, DHHS and the Office of the National Coordinator for Health Information Technology have made clear that patient privacy is a top concern. As such, the conduct complained of in this action clearly was not the result of compliance with federal regulations, and the federal government certainly did not direct Defendants to engage in it.

As demonstrated above, Defendants fail to show they followed the close direction of the federal government.

**C.    The Government Would Not Have to Build an Electronic Records System.**

Defendants argue that without the Meaningful Use Program the federal government would be left alone to digitize health information and increase engagement with Medicare beneficiaries.

---

[3]   Accessible at https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html.

Dkt. 13 at 19-21. The argument ignores that this case is not about digitizing health information. Even if it was, the federal government is not obligated to create the electronic health records itself. *See BJC Health Sys.*, 2023 WL 369427, at *4. Further, the government could always achieve the ends it seeks by enacting a law that actually compels compliance with the standards it currently only incentivizes.

Defendants' reliance on caselaw involving government contractors (Dkt. 13 at 20-21) is inapposite. Unlike those cases, here, Defendants are not government contractors. As the Court in *Mohr* held, the "'special relationship' between government contractors and the federal government does not exist in the absence of a contract." 2023 WL 3044594, at *3.

As in *Mohr*, Defendants appear "to only argue that the incentive program is sufficiently like a contract such that Defendant[s] [were] acting under the United States. Yet something 'like a contract' cannot bootstrap a party into the major leap of *having* a legitimate contractual relationship that qualifies as a special relationship for [purposes of the federal officer removal statute]." *Id.* (emphasis in original); *see also W. Va. State*, 23 F.4th at 300 (describing "matters involving private contractors working on the behalf of the government" as the "archetype case"); *BJC Health Sys.*, 2023 WL 369427, at *4 (distinguishing between defendant and a government contractor).

In short, Defendants have failed to establish they were assisting the federal government in fulfilling basic governmental tasks.

### D.   Defendants' Reliance on *UPMC* and *ProMedica* Is Misplaced.

Throughout their opposition, Defendants rely upon two out-of-circuit cases—*Doe I v. UPMC*, 2020 WL 4381675 (W.D. Pa. July 31, 2020), and *Doe v. ProMedica Health Sys., Inc.*

7

("*ProMedica*"), 2020 WL 7705627 (N.D. Ohio Oct. 30, 2020).  Dkt. 13 at 15-17, 19-22.  Plaintiff respectfully submits that each of those cases was decided incorrectly.

In *Quinto*, the court analyzed *UPMC* and *ProMedica* and determined that they "entailed an overly broad interpretation of what it means to assist a federal superior with its tasks or duties, which 'would permit removal to federal court in circumstances far beyond anything Congress intended.'"  2023 WL 1448050, at *3 (quoting *Jalili-Farshchi v. Aldersly*, 2021 WL 6133168, at *4 (N.D. Cal. Dec. 29, 2021).  The court ultimately held that *UPMC* and *ProMedica* "provide no basis for finding jurisdiction here."  *Id.*

The court in *BJC Health Sys.* reached the same conclusion.  *See* 2023 WL 369427, at *4 and n.4.  There the court declined to follow *UPMC* and *ProMedica* because it was "not persuaded that [the defendant's] receipt of statutory incentive payments means that it is 'acting under' a federal officer for purposes of the federal officer removal statute."  *Id.*  The court reasoned that the defendant was "not assisting or helping a federal officer carry out her duties or tasks by creating a website and patient portal to allow patients online access to medical information . . . ."  *Id.*  The court further noted that the "statute neither authorized nor obligates the federal government to create such an infrastructure itself."  *Id.*  Finding that it is not typically a duty or task of the federal government to provide patients with online access to their medical information, the court then held that "it cannot be said that [the defendant's] creation of a website and online patient portal fulfills a 'basic government task' that the federal government itself otherwise would be required to carry out."  *Id.*

Examination of the *UPMC* and *ProMedica* opinions themselves also leads to the same conclusion.  For instance, although the court in *UPMC* described what the Meaningful Use Program requires, it only did so generally, observing that the program required defendant to "raise

8

awareness and increase usability of the UPMC website and the MyUPMC portal." 2020 WL 4381675, at *6. Similarly, in *ProMedica*, the court only described the program in general terms. 2020 WL 7705627, at *1 ("Under this program, eligible healthcare providers received incentive payments from DHHS if they demonstrated 'meaningful use' of certified HER technology."). Those descriptions fail to show the close direction, subjection, guidance or control, or the unusually close relationship, required for removal. *See W. Va. State*, 23 F.4th at 303-04. Additionally, the courts in both *UPMC* and *ProMedica* did not explicitly or implicitly address whether, without the Meaningful Use Program, the government itself would have had to perform that program's function. *See, e.g.*, 2020 WL 4381675, at *6; 2020 WL 7705627, at *2. As set forth above, the answer is unavoidably no.

The *UPMC* and *ProMedica* decisions lack even persuasive value, and this Court should not give them any weight.

**II.     There Is No Causal Connection Between a Federal Officer's Direction and Plaintiff's Claims.**

Even if Defendants could satisfy the "arising under" requirement, the Court should still remand this case because Defendants have failed to establish a causal nexus between the challenged conduct and a federal officer's direction. Plaintiff alleges Defendants utilized the Facebook Tracking Pixel and other tracking code on their website which unlawfully permitted Facebook to intercept Plaintiff's and class members' communications with Defendants. *See, e.g.,* Dkt. 3 ¶¶ 2, 12. Ignoring the actual provisions of the Meaningful Use Program as discussed throughout, Defendants contend "the very act of Johns Hopkins' use of technology on its website and patient portal was in furtherance of the government's directive to optimize patient engagement with their medical information." Dkt. 13 at 23. That is not the case. Defendants did not act pursuant to a government directive. *See, supra*, § I.A-C. Rather, they acted voluntarily. Moreover,

9

their use of the Facebook Tracking Pixel was at odds with the government's directive not to use such technology. *See, supra,* § I.B.

*Sawyer v. Foster Wheeler LLC*, 860 F.3d 249 (4th Cir. 2017), on which Defendants rely (Dkt. 13 at 22-23), does not change this conclusion. Unlike in *Sawyer*, Defendants have failed to show a sufficient connection or association between Plaintiff's claims and any action the government required Defendants to take with respect to the Facebook Tracking Pixel. *Cf. Sawyer*, 860 F.3d at 258. Defendants do not even contend that the acts that form the basis of Plaintiff's complaint—Defendants' placement of tracking code on their website—were performed under the direction of federal officers. Nor have they pointed to any evidence that a federal officer directed them to place the tracking code on their website. They cannot, because the government has made clear that this conduct is prohibited. *See, supra,* § I.B. Thus, instead of acting under federal authority, Defendants' conduct is explicitly proscribed by the very federal agency they claim they took direction from.

## CONCLUSION

Defendants fail to satisfy multiple requirements for federal officer removal. Accordingly, Plaintiff respectfully requests that the Court grant his motion and remand this action to the Circuit Court for Baltimore County, Maryland.

Dated: May 19, 2023                                    Respectfully submitted,

**MANN & RISCH LLC**

*/s/ Nathaniel K. Risch*
Nathaniel K. Risch (Bar No.: 28764)
101 E. Chesapeake Ave., Ste. 403
Towson, MD 21286
Tel: (410) 929-5145
Fax: (410) 307-1007
E-Mail: nate@mannrisch.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn*
Philip L. Fraietta*
888 Seventh Avenue
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: jarisohn@bursor.com
           pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Christopher R. Reilly*
701 Brickell Ave., Suite 1420
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: creilly@bursor.com

**DRURY LEGAL, LLC**
Scott R. Drury*
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
E-Mail: scott@drurylegal.com

*Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiff and the Putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of May 2023, a copy of the foregoing was served via the CM/ECF system on:

Elizabeth A. Scully, Esquire
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
*Attorney for Defendants*

/s/ Nathaniel K. Risch
Nathaniel K. Risch