IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ANITA BEAUFORD, | * |
| Plaintiff, | * |
| v. | *   CIVIL NO. JKB-23-0660 |
| THE JOHNS HOPKINS HEALTH SYSTEM CORPORATION, et al., | * |
| Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

Defendant The Johns Hopkins Hospital ("Johns Hopkins")[1] removed this action to this Court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). (*See generally* ECF No. 1.) Pending before the Court is Plaintiff Anita Beauford's Motion to Remand. (ECF No. 12.) The Motion is fully briefed and no hearing is required. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, the Court will grant Beauford's Motion and remand this action to the Circuit Court for Baltimore County.

### I.   *Factual and Procedural Background*

Beauford filed a purported class action suit against Johns Hopkins in the Circuit Court for Baltimore County. (*See* ECF No. 3.) The suit was brought "on behalf of all Maryland residents who have accessed and used any website that [Johns Hopkins] own[s] and operate[s], including www.hopkinsmedicine.org." (*Id.* ¶ 1.) Beauford alleges that Johns Hopkins "aid[ed], employ[ed], agree[d], and conspire[d] with Facebook/Meta to intercept communications sent and received by

---

[1] Beauford brought suit against "The Johns Hopkins Hospital, Inc., The Johns Hopkins Health System Corporation, and The Johns Hopkins University." (*See* ECF No. 3.) Defendant asserts that the correct entity is "The Johns Hopkins Hospital." (*See* ECF No. 13 at 6.) This discrepancy is not relevant for purposes of the pending Motion.

1

[Beauford] and Class Members, including communications containing protected medical information." (*Id.* ¶ 2.) Beauford alleges violations of the Maryland Wiretap Act. (*Id.* ¶¶ 74–81.)

Johns Hopkins removed this action to this Court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). (*See generally* ECF No. 1.) Johns Hopkins asserts that, "[s]ince at least 2004, the federal government – through executive order, legislation, and regulatory and sub-regulatory action – has directed and overseen a public-private initiative to develop a nationwide infrastructure for health information technology." (*Id.* at 4.) As part of this effort, "[i]t has incentivized and directed providers who participate in the Medicare and Medicaid program (like Johns Hopkins) to offer patients online access to their records, and to optimize patient engagement with their medical information." (*Id.*) Johns Hopkins explains that it "has dutifully assisted and followed the federal government's direction in this effort." (*Id.*)

In particular, Johns Hopkins explains that a National Health Information Technology Coordinator was established in 2004 with the aim of "implement[ing] interoperable health information technology in both the public and private health care sector[.]" (*Id.* at 4.) One goal of this effort was to increase online access to medical records. (*Id.* at 5.) The Office of the National Coordinator was codified in 2009. (*Id.* at 5–6.) Further, Congress "codified a series of incentive payments for the Department of Health and Human Services [("HHS")], in conjunction with the Centers for Medicare and Medicaid Services [("CMS")], to make to health care providers for their adoption of health information technology, including through the Medicare program." (*Id.* at 6.)

HHS adopted "Meaningful Use" regulations. (*Id.* at 6–8.) A "central component" of the Meaningful Use regulations was the ability for patients to access their health care records online and they "required health care providers to attest to the National Coordinator and to [CMS] on their progress with respect to this criteria in particular." (*Id.*) Johns Hopkins explains that "the

2

federal government directed health care providers to make online patient portals available to their patients" and has provided guidance regarding effective patient portal programs and how to optimize such programs. (*Id.* at 8–10.)

Johns Hopkins' patient portal, MyChart, "is a tool created and promoted by Johns Hopkins for its patients' use as a direct result of the federal initiative to make health care records available to patients online" and that "[s]ince establishing the patient portal, Johns Hopkins has continually met the Meaningful Use criteria, and has thus received incentive payments from the federal government." (*Id.* at 10.) Johns Hopkins also explains that "[e]very year, [it] has submitted reports on its involvement in the Meaningful Use Program to [CMS]" and that "[t]hese reports have been specifically prepared in order to meet federal Meaningful Use Program requirements[.]" (ECF No. 13 at 11–12.)

## II. *Legal Standard*

28 U.S.C. § 1442(a)(1) permits removal when the defendant is "the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency therefore, in an office or individual capacity, for or relating to any act under color of such office[.]" "Under the [federal officer removal] statute, private actors can remove a case to federal court when they: (1) acted under the direction of a federal officer; (2) have a colorable federal defense; and (3) are engaged in government-directed conduct that was causally related to the plaintiff's claims." *W. Va. State Univ. Bd. of Governors v. Dow Chem. Co.*, 23 F.4th 288, 297 (4th Cir. 2022).

"[T]he Supreme Court has provided clear instructions that . . . the federal officer removal statute must be 'liberally construed.'" *Cnty. Bd. of Arlington Cnty., Va. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 250–51 (4th Cir. 2021) (quoting *Watson v. Phillip Morris Cos.*,

3

*Inc.*, 551 U.S. 142, 150 (2007)). Therefore, "the ordinary 'presumption against removal' does not apply." *Id.* at 251 (citations and quotations omitted). However, although a removing defendant benefits from a liberal construction of the federal officer removal statute, it still "bear[s] the burden of establishing jurisdiction as the party seeking removal." *Id.* at 250–51 (citation omitted).

### III. Analysis

Beauford argues that Johns Hopkins has not met its burden to establish that removal pursuant to the federal officer removal statute is appropriate. (*See generally* ECF No. 12-1.) Because Johns Hopkins has not met its burden to establish that it is "acting under" the federal government, the Court will grant Beauford's Motion and remand this case.

"The words 'acting under' are broad, and . . . the [federal officer removal] statute must be 'liberally construed.'" *Watson*, 551 U.S. at 147 (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)). The Supreme Court has cautioned, however, that "broad language is not limitless" and that "a liberal construction" "can find limits in a text's language, context, history, and purposes." *Id.* The federal officer removal statute "was meant to protect private persons who lawfully assist a federal officer in the performance of his official duty, but only if the private parties were authorized to act with or for federal officers or agents in affirmatively executing duties under federal law." *W. Va. State Univ.*, 23 F.4th at 299 (internal quotations and alterations omitted) (citing *Watson, Inc.*, 551 U.S. at 142–43).

"*Watson* defined 'acting under' as a private person who is under the 'subjection, guidance, or control' of a federal officer which 'must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior.'" *W. Virginia State Univ.*, 23 F.4th at 299 (emphasis in original) (citing *Watson*, 551 U.S. at 151–52). "A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory

4

phrase 'acting under' a federal 'official.'" *Watson*, 551 U.S. at 153. This "is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Id.* Indeed, "[a] contrary determination would expand the scope of the statute considerably[.]" *Id.* As the Fourth Circuit recently explained:

> [I]n evaluating whether a private actor is "acting under" federal "subjection, guidance, or control," we must first determine whether the private actor is merely complying with federal laws, regardless of how stringent and detailed the regulations may be. Second, even if we find that a private actor's conduct goes beyond mere compliance with federal laws, we must then ask whether the private actor's conduct is helping or assisting federal officers fulfill a basic governmental task, under the government's control or subjection, that the government would otherwise have to perform itself.

*W. Virginia State Univ.*, 23 F.4th at 301–02 (citing *Watson*, 551 U.S. at 152).

Johns Hopkins contends that it is "acting under" a federal officer because "[t]he federal government is incentivizing, regulating, monitoring, and supervising Johns Hopkins actions in the Meaningful Use program in order to meet the federal government's national priority of interoperable health information technology." (ECF No. 1 at 11.) Johns Hopkins explains that it—along with other entities—is "helping the government produce [a] nationwide, interoperable information technology infrastructure for health information" and that "in the absence of Johns Hopkins' actions, . . . the federal government would be left alone to complete its mission." (*Id.* at 11–12.)

Johns Hopkins has not established that it is "acting under" the federal government for purposes of § 1442(a). Johns Hopkins is merely complying with a federal program, which is insufficient to confer federal jurisdiction under § 1442(a). *See Watson*, 551 U.S. at 153. While the Meaningful Use Program may subject Johns Hopkins to a certain degree of federal government oversight, simply complying with such federal directives is insufficient to confer federal jurisdiction. *See, e.g., Beltran v. Cedars-Sinai Health Sys.*, Civ. No. 23-02626-DSF-JPRX, 2023

5

WL 3620740, at *3 (C.D. Cal. May 24, 2023) (finding that removal was not justified where defendant also pointed to the Meaningful Use Program as the basis for federal officer jurisdiction, as "[t]he directions [the defendant] points to are general regulations and public directives regarding the development of health information technology and an electronic health records infrastructure"); *Quinto v. Regents of Univ. of Cal.*, Civ. No. 22-04429-JD, 2023 WL 1448050, at *3 (N.D. Cal. Feb. 1, 2023) (finding that removal was not justified where defendant also pointed to the Meaningful Use Program as the basis for federal officer jurisdiction and explaining that "merely being subject to a regulatory scheme is not the same as acting under a federal agency's close direction").

Further, although Johns Hopkins invites the Court to find that its receipt of incentive payments weigh in favor of removal, "receiving incentive payments for acting in a way that promotes a broad federal interest—in an area outside the traditional responsibility of the federal government—is not the same as being contracted to carry out, or assist with, a basic governmental duty." *Quinto*, 2023 WL 1448050, at *2; *see also Doe, I v. BJC Health Sys.*, Civ. No. 22-919-RWS, 2023 WL 369427, at *4 (E.D. Mo. Jan. 10, 2023) (rejecting argument that defendant's "receipt of statutory incentive payments means that it is 'acting under' a federal officer for purposes of the federal officer removal statute"); *Mohr v. Trustees of Univ. of Pa.*, Civ. No. 23-0731, 2023 WL 3044594, at *4 (E.D. Pa. Apr. 20, 2023) ("Though complying with CMS's priorities is financially beneficial to Defendant, financial incentives alone do not create an unusually close relationship that involves 'subjection, guidance, or control.'" (quoting *Watson*, 551 U.S. at 151)).[2]

---

[2] The relationship between Johns Hopkins and the federal government is a far cry from the type of relationship that this Court has previously found sufficient to sustain federal officer jurisdiction. *See, e.g., Barrett v. A.W. Chesterton Co.*, Civ. No. JKB-18-3911, 2019 WL 1586240, at *3 (D. Md. Apr. 12, 2019) (finding federal officer removal warranted where the defendant, a government contractor, "plausibly established its turbines and related

Even if the Court were to find that Johns Hopkins' conduct goes beyond mere compliance with federal laws or regulations—which it does not—the Court would next need to "ask whether [Johns Hopkins] is helping or assisting federal officers fulfill a basic governmental task, under the government's control or subjection, that the government would otherwise have to perform itself." *See W. Va. State Univ.*, 23 F.4th at 301–02. Here too Johns Hopkins does not meet its burden to establish this Court's jurisdiction, as it "offers no facts to conclude that the Government would (or could) have built the patient portal for Defendant's patients to electronically access their health records had Defendant decided not to do so." *Crouch v. Saint Agnes Med. Ctr.*, Civ. No. 22-01527-ADA-EPG, 2023 WL 3007408, at *6 (E.D. Cal. Apr. 19, 2023). As another district court has observed:

> Despite the federal government's expressed desire to encourage the implementation of interoperable health information technology infrastructure, the statute neither authorizes nor obligates the federal government to create such an infrastructure itself. While the federal government may have an interest in ensuring an interoperable health information technology infrastructure, it is typically not the duty or task of the federal government to provide patients online access to medical information.

*BJC Health Sys.*, 2023 WL 369427, at *4 (citations, quotations, and alterations omitted).

In short, Johns Hopkins' participation in the Meaningful Use Program falls short of type of relationship that gives rise to federal officer jurisdiction. Because Johns Hopkins has not established that it was "acting under" the "subjection, guidance, or control" of the federal government, the Court need not examine the remaining two prongs a private actor must establish to invoke the federal officer removal statute. *See W. Virginia State Univ.*, 23 F.4th at 307.

---

products were supplied to the Coast Guard for certain classes of ships in compliance with applicable military specifications, that those specifications required the use of asbestos in the equipment, and that the Coast Guard was fully aware of asbestos-related health hazards").

7

In concluding that Johns Hopkins has not established this Court's jurisdiction, the Court joins the numerous district courts that have found removal inappropriate under similar facts. *See, e.g., Doe v. Hoag Mem'l Presbyterian Hosp.*, Civ. No. 23-0444-CJC-ADSX, 2023 WL 3197716, at *3 (C.D. Cal. May 2, 2023); *Beltran*, 2023 WL 3620740, at *3; *Heard v. Torrance Mem'l Med. Ctr.*, Civ. No. 22-09466-DSF-JPRX, 2023 WL 2475544, at *3 (C.D. Cal. Mar. 13, 2023); *BJC Health Sys.*, 2023 WL 369427, at *5; *Quinto*, 2023 WL 1448050, at *2; *Mohr*, 2023 WL 3044594, at *5.[3]

### IV.   Conclusion

For the foregoing reasons, the Court will grant Beauford's Motion to Remand (ECF No. 12) and remand this action to the Circuit Court for Baltimore County.

DATED this 27 day of June, 2023.

BY THE COURT:

_____
James K. Bredar
Chief Judge

---

[3]   The Court does not find persuasive the reasoning of two district courts that have found that a defendant was "acting under" the federal government under similar facts. In *Doe I v. UPMC*, a district court found that "[t]he fact that the government offers payment in exchange for [defendant's] voluntary participation" shows that the relationship between the defendant and the federal government is "less like [a] regulator-regulated relationship" and "more like [a] government contractor relationship[.]" Civ. No. 20-359, 2020 WL 4381675, at *6 (W.D. Pa. July 31, 2020); *see also Doe v. ProMedica Health Sys., Inc.*, Civ. No. 20-1581, 2020 WL 7705627, at *3 (N.D. Ohio Oct. 30, 2020) (relying on *Doe I v. UPMC* and concluding similarly).

As noted above, the Court does not find that the incentive payments convert Johns Hopkins' relationship with the federal government into one that confers federal jurisdiction pursuant to § 1442(a). Similar to other courts that have rejected the reasoning in these two cases, the Court concludes that "[t]hese cases entailed an overly broad interpretation of what it means to assist a federal superior with its tasks or duties, which would permit removal to federal court in circumstances far beyond anything Congress intended." *Quinto*, 2023 WL 1448050, at *3 (citation and quotations omitted).